# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOANNE BLAREK,

        Plaintiff,

    v.                                    Case No. 06-C-0420

ENCORE RECEIVABLE MANAGEMENT, INC.,

        Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  PROCEDURAL AND FACTUAL BACKGROUND

On April 5, 2006, the plaintiff, Joanne Blarek ("Blarek"), filed a single count complaint against the defendant, Encore Receivable Management, Inc. ("Encore"), alleging that a debt collection letter sent from Encore to Blarek violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  Specifically, Blarek alleges that the debt collection letter made a false representation, in violation of 15 U.S.C. § 1692e, and failed to state the name of the creditor, in violation of 15 U.S.C. § 1692g(a)(2).

Currently pending before the court is the defendant's motion for summary judgment which is fully briefed and is ready for resolution.  For the reasons which follow, the defendant's motion for summary judgment will be denied.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendant's motion for summary judgment was accompanied by a set of proposed findings of fact.  Likewise, the plaintiff's response to the defendant's motion for summary judgment contained responses to the

defendant's proposed findings of fact as well as some additional proposed findings of fact. A review of the parties' respective proposed findings and the responses thereto reveal that the following are material and (except where noted) undisputed facts in this case.

Encore Receivable Management, Inc. is a debt collector with offices in Kansas. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 3.) Encore is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. (DPFOF ¶ 4.)

Blarek is a resident of Milwaukee, Wisconsin. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶ 39.) Her alleged debts were incurred for personal family or household purposes, namely jewelry. (PPFOF ¶ 40.)

On or about July 11, 2005, Encore sent Blarek a debt collection letter regarding an alleged debt. (DPFOF ¶ 5.) The letter identified the creditor as "HSB/". (PPFOF ¶ 43.) The letter was a validation letter. (DPFOF ¶ 6.) Encore mails a validation letter within five days after the initial communication with a consumer in connection with the collection of any debt. (DPFOF ¶ 23.) The letter also included Blarek's credit card account number, and the following language:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This communication is from a debt collector and is an attempt to collect a debt. Any information will be used for that purpose.

(DPFOF ¶ 22; Rowe Aff., Ex. 2.)

2

Blarek's credit card statements from March 2005 through July 2005 all identify the creditor as "Citibank USA, N.A.," and identify the account as a Zales (jewelry store) branded account. (PPFOF ¶ 47.)

HSB is a service mark for Hurley State Bank Corporation South Dakota, and is registered with the United States Patent and Trademark Office. (DPFOF ¶ 12.) "Hurley State Bank" is still a registered name with the South Dakota Corporations Division. (DPFOF ¶ 11.) Hurley State Bank had been an insured South Dakota commercial bank that issued private label credit cards to consumers on behalf of major retail companies. (DPFOF ¶ 9.)

The parties dispute the characterization of Hurley State Bank's eventual changing of its name to Citibank USA, N.A. Blarek alleges that Citibank merged with Hurley State Bank in November, 2001, and was converted to a national bank and renamed "Citibank USA, N.A." in January, 2002. (PPFOF ¶ 46.) Encore alleges that Hurley State Bank changed its name to "Citibank USA, N.A." and converted to an insured national bank on January 3, 2001, and continued to exist under that name until October 1, 2006, when it then merged into and became subsequently operated as part of Citibank (South Dakota), N.A. (Def.'s Response to PPFOF ¶ 46.)

Encore uses the "Ontario FACS" computer platform, or system, with respect to its collection of debts. (DPFOF ¶ 8.)

3

Citi Commerce Solutions ("CCS") services the Citibank/Hurley State Bank private credit card labels.[1] (DPFOF ¶ 13.) CCS transmitted Blarek's account for collection by Encore through the Ontario FACS system. (DPFOF ¶ 14.)

On or before July 8, 2005, Encore received Blarek's account for collection from CCS through its Ontario FACS system located in Olathe, Kansas. (DPFOF ¶ 15.) This information is received directly from CCS and is incorporated into Encore's computer system upon receipt. (DPFOF ¶ 16.) Encore's processes of uploading debtor information from its clients and generating letters are, for the most part, completely automated. (PPFOF ¶ 53.)

The account file produced by Encore contains the text: "Clnt: ACBHSB CUTU COMMERCE SOLUTIONS/HURLEY STATE BNK, Kansas City, MO, 6035251017201687." (PPFOF ¶ 48.)

Encore employs a staff of approximately fifty employees to monitor all collection systems, procedures, and programs and to provide ongoing training and monitoring of its collection representatives.[2] (DPFOF ¶ 29.)

---

[1]The parties dispute the characterization of the credit card label. However, it is undisputed that CCS services the credit card label which provided Blarek with the credit card at issue, and which listed "Citibank USA, N.A." as the creditor on credit card statements for the period in which Blarek allegedly failed to pay her Zales account.

[2]Blarek objects to the proposed findings of fact relating to Encore's procedures allegedly used to prevent debt collection errors, on the grounds that they do not present a material fact because they are irrelevant. Blarek argues that these procedures are not "reasonably adapted" to prevent the type of errors alleged in Blarek's complaint. However, Blarek does not dispute that Encore actually uses these procedures, and as such, the descriptions of these procedures will be admitted as being true. Whether these procedures are "reasonable adapted" is an issue which will be addressed later in the analysis.

All collection employees of Encore must successfully complete a full week of training on the FDCPA and applicable federal and state laws and regulations. (DPFOF ¶ 30.) All collection employees of Encore must pass a comprehensive test on the FDCPA and sign an FDCPA acknowledgment before contacting consumers. (DPFOF ¶ 31.) By signing the FDCPA acknowledgment, the Encore employee agrees to abide by the regulations and requirements as set forth in the FDCPA and receives written notice that any violation of the FDCPA may result in disciplinary action up to and including termination of employment. (DPFOF ¶ 32.)

All collection employees of Encore continue to receive ongoing training and testing on the FDCPA and applicable federal and state laws and regulations. (DPFOF ¶ 33.)

Jennifer Patterson, Encore's client services representative for Citibank accounts, testified that she did not know whether Encore received a communication from Citibank regarding Hurley State Bank's merger with Citibank. (PPFOF ¶¶ 55-56.) Ms. Patterson did not know what actions Encore took to update Encore's letters when Hurley State Bank became Citibank USA, N.A. in 2002. (PPFOF ¶ 57.)

## II. SUMMARY JUDGMENT STANDARDS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963

5

amendment).  "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion."  *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255).  "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'"  *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425).  "The evidence must create more than 'some metaphysical doubt as to the material facts.'"  *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir.

1995)).  A mere scintilla of evidence in support of the nonmovant's position is insufficient.  *Id.*

(citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The FDCPA is "designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997).

### A. 15 U.S.C. § 1692g(a)(2)

Blarek contends that Encore violated 15 U.S.C. § 1692g(a) by failing to properly state the name of the creditor.[3]  Title 15 U.S.C. § 1692g(a) sets forth the requirements for a validation letter:

§ 1692g. Validation of debts

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

---

[3]Blarek, in her complaint, combines her claims under 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692e(10) into one general FDCPA count.  Moreover, both parties present arguments which seem to treat both claims as being essentially the same.  Although the two statutory provisions are interrelated, they are still two separate claimed violations of the Act.  Such being the case, the court will analyze the claimed violations under each statute separately.

7

(1) the amount of the debt;
(2) *the name of the creditor to whom the debt is owed;*
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added.)

"Claims against debt collectors under the FDCPA are to be viewed through the eyes of the "'unsophisticated consumer.'" *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) (citing *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994). "The key consideration is 'that the unsophisticated consumer is to be protected against confusion whatever form it takes.' *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) (quoting *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The "unsophisticated consumer" standard "assumes that the debtor is 'uninformed, naive, or trusting,' [but] that statements are not confusing or misleading unless a significant fraction of the population would be similarly misled." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004) (quoting *Veach v. Sheeks*, 316 F.3d 690, 692-93 (7th Cir. 2003)). The Seventh Circuit has rejected the "least sophisticated debtor" standard used by other courts, and rather assumes that "our uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000).

8

This "unsophisticated consumer" standard applies to claims under § 1692g. *See, e.g., Durkin v. Equifax Check Servs*., 406 F.3d 410, 414 (7th Cir. 2005); *McMillan v. Collection Professionals, Inc*., 455 F.3d 754, 758 (7th Cir. 2006) ("A letter will not be considered to be a violation of § 1692g, however, unless 'a significant fraction of the population would be . . . mislead' by the letter."). This includes claims under § 1692g(a)(2). Indeed, this court has applied the "unsophisticated consumer" standard for alleged violations of § 1692g(a)(2) due to a debt collector's false or confusing identification of the creditor in a validation letter. *See Schneider v. TSYS Total Debt. Mgmt., Inc*., 2006 WL 1982499, *1 (E.D. Wis. 2006). As such, under the "unsophisticated consumer" standard, there is a violation of § 1692g(a)(2) if an "unsophisticated consumer" would be confused or misled as to the identity of the creditor.

Blarek alleges that Encore violated 15 U.S.C. § 1692g(a)(2) by stating in its validation letter that the creditor was "HSB/" rather than "Citibank USA, N.A." According to Blarek, identifying the creditor as "HSB/" was a failure to state "the name of the creditor to whom the debt is owed."

Encore, on the other hand, argues that identifying the creditor as "HSB/" was not a failure to state the name of the creditor to whom the debt is owed, as "HSB" is a live registered trademark of Hurley State Bank, which is still a registered name with the South Dakota Corporations Division. According to Encore, because "HSB/" is the name of the creditor, Blarek must present extrinsic evidence to prove that an unsophisticated consumer would be confused.

As an initial matter, 15 U.S.C. § 1692g(a)(2) can create liability for a statement naming the creditor which on its face violates the FDCPA because it is plainly confusing, even in the absence of extrinsic evidence. "There is no basis for so flat a rule" that "to withstand summary judgment the plaintiff must always submit a survey or some other form of systematic empirical evidence

9

demonstrating the propensity of the letter to confuse." *Chuway*, 362 F.3d at 948. "If it is apparent just from reading the letter that it is unclear . . . and the plaintiff testifies credibly that she was indeed confused . . . no further evidence is necessary to create a triable issue." *Id.*; *see also Durkin*, 406 F.3d at 415 ("when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial."). In fact, "[i]n some situations, when an FDCPA violation is so 'clearly' evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff. *Durkin*, 406 F.3d at 415.

In *Avila*, the Seventh Circuit held that it was appropriate for the district court to conclude that contradictory language in a validation letter violated § 1692g, even without any reference to evidence of actual consumer confusion. 84 F.3d at 227. In *Avila* the validation letter stated that a debtor had 30 days to dispute the debt, and followed that with a statement that 'if the above does not apply' you have ten days to pay or action would be taken. *Id.* at 226. The court held that this language was entirely inconsistent, and that it would confuse an unsophisticated consumer. *Id.* The court in *Avila* compared this situation to trademark cases involving literally false statements, noting that as a general rule in trademark cases, "if a statement is literally false, the court may grant relief without reference to the reaction of buyers or consumers of the product." *Id.* at 227. The court reasoned that "[j]ust as the analysis involved in evaluating a literally false statement turns on whether the statement is true or false, the language in the collection letters either contradicts the validation notice or it does not." *Id.*

10

Blarek argues that the court should strictly interpret § 1692g(a)(2) to mean that any false statement of the creditor's name is, on its face, a violation of § 1692g(a)(2), such that extrinsic evidence is unnecessary. In support of her argument, Blarek points to Seventh Circuit cases strictly interpreting § 1692g(a)(1), which requires debt collectors to state "the amount of the debt" in the validation letter, and suggests that the same reasoning applies to cases involving § 1692g(a)(2). The Seventh Circuit has interpreted § 1692(a)(1) to mean that the letter must state the exact and correct amount of the debt in order to comply with the FDCPA. In *Miller v. McCalla, Raymoer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, the court held that a letter listing the unpaid balance as the debt did not comply with the FDCPA, as this was only part of the debt. 214 F.3d 872, 875 (7th Cir. 2000). The court did not look at extrinsic evidence in determining if this was a violation. *Id.*

Blarek argues that, just as the Seventh Circuit has strictly interpreted § 1692g(a)(1), so too should this court strictly interpret § 1692g(a)(2). I agree, to a point. To be sure, a failure to correctly name the creditor in a validation letter could be inherently confusing on its face such that no extrinsic evidence is needed to prove a violation of the statute. However, although a statement on its face can violate § 1692g(a)(2), this does not mean that the court does not still apply the unsophisticated consumer standard in those situations.[4] Moreover, unlike the debt requirement, the correct "name"

[4]Imposing liability because a statement on its face violates the FDCPA is not to say that there is liability simply because this is a technical violation of the FDCPA, and that the unsophisticated consumer standard does not apply. Rather, the failure to name the correct creditor could create liability because this could be inherently confusing such that extrinsic evidence is unnecessary to prove confusion. Blarek argues that the technical failure to state the name of the creditor automatically creates liability under the FDCPA, regardless of whether an unsophisticated consumer would be confused. (Pl.'s Br. at 7-8.) However, this misconstrues the reasoning behind the Seventh Circuit's allowance of relief without extrinsic evidence. The reason the court does not require extrinsic evidence showing consumer confusion in certain instances is not because the issue of consumer confusion is irrelevant, but rather because certain statements inherently implicate consumer confusion such that extrinsic evidence to prove the same is unnecessary. The Seventh Circuit, in *Avila*, did not simply impose liability because the statement in the validation letter was contradictory.

11

of a creditor under § 1692g(a)(2) is not as easily determined. Indeed, a creditor may have multiple names which qualify as the correct "name" of a creditor under § 1692g(a)(2), and which would not cause an unsophisticated consumer to be confused as to the identity of the creditor.

Encore contends that the statement in the letter does not fail to name the creditor because the FDCPA does not require debt collectors to use the creditor's incorporated name when identifying the creditor. Rather, according to Encore, the FDCPA allows a debt collector to use, among other names, a commonly used acronym when identifying the creditor.

Encore points to the differences in the FDCPA requirements for identifying debt collectors and for identifying creditors, and notes that while there is a requirement that the debt collector use the "true name" of the debt collector's business, there is no requirement for debt collectors to use the "true name" of the creditor. More precisely, Title 15 U.S.C. § 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Encore also argues that the FDCPA's requirements regarding creditors provides an indication as to what is required of debt collectors when identifying creditors in a validation letter. Under the FDCPA, creditors are generally exempt from liability. However, 15 U.S.C. § 1692a(6) creates the "false name exception," under which a creditor can be treated as a debt collector if a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Courts interpreting the "false

---

Rather, the court imposed liability because, as a result of the statement, the unsophisticated consumer would "be scratching his head upon receipt of such a letter. He wouldn't have a clue as to what he was supposed to do before real trouble begins." *Avila*, 84 F.3d at 226. Given that "[t]he validation notice was clearly overshadowed by the language that followed on its heels," evidence of actual consumer confusion was not required. *Id*.

name exception" have held that a creditor is not required to use its exact, legal name to avoid falling under the exception.  *See Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F. Supp. 1122 (S.D. W.Va. 1990).  Rather, a creditor may use "the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation."  *Maguire*, 147 F.3d at 235.

Although § 1692a(6) applies to creditors rather than to debt collectors, I find that it is nonetheless instructive when considering the obligations of debt collectors when identifying creditors.  Section 1692g(a)(2) does not elaborate on what is meant by the "name of the creditor," and does not contain specific details such as the "true name"requirement of § 1692e(14).  Given the ambiguity in what constitutes the creditor's "name," it is reasonable to infer that any legitimate name under which the creditor operates could qualify as naming the creditor as required in § 1692g(a)(2). This could include the use of a commonly used acronym.  There is nothing in the statute which indicates that debt collectors must use the creditor's incorporated name in order to comply with § 1692g(a)(2).  The FDCPA has no provision which indicates that debt collectors, in regards to identifying a creditor, should be held to a higher standard than that of creditors under § 1692a(6).

Given that the correct name of a creditor may include "the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation," the use of a name which is not the exact incorporated name would not necessarily create a violation so clear on its face such that extrinsic evidence is not needed to prove a violation. Such being the case, Blarek cannot simply rely on "HSB/" being a name which is not the exact incorporated name to avoid having to provide proof of consumer confusion.  Indeed, Blarek concedes

13

in her brief that if Encore had identified the creditor as "Citibank" rather than "Citibank USA, N.A.," a survey may have been required. (Pl.'s Br. at 14.)

In sum, I am unable to conclude that any name of the creditor which is not the exact incorporated name of the creditor necessarily violates § 1692g(a)(2) such that no extrinsic evidence is ever needed to prove confusion. For extrinsic evidence to be unnecessary, the stated name of the creditor must be plainly confusing on its face.

Although a commonly used acronym would not be plainly confusing on its face, a particularly non-obvious acronym can on its face constitute a plainly confusing statement in violation of § 1692g(a)(2). Blarek points to Seventh Circuit cases which have held that a potentially misleading acronym identifying the creditor could cause a creditor to fall under the false name exception, as an unsophisticated consumer may be unable to see through acronyms. *Catencamp v. Cendant Timeshare Resort Group*, 471 F.3d 780, 782 (7th Cir. 2006). In *Catencamp*, the creditor, "Cendant Timeshare Resort Group -- Consumer Finance, Inc.," sent a letter identifying itself as "CTRG -- Consumer Finance," an acronym which the plaintiff had never encountered. *Id*. The court, in holding that the false name exception applied, reasoned that "the norm [is] that unsophisticated readers do not see through acronyms when the creditor's full name is missing." *Id*. Even though the false name exception applies to creditors rather than debt collectors, the court's reasoning is nevertheless instructive on the related issue of debt collectors identifying creditors. As in *Catencamp*, a letter which identifies the creditor using an acronym which the consumer has never encountered may be inherently confusing.

14

Encore argues that it did not violate § 1692g(a)(2) because "HSB/" is a commonly used acronym, and that this acronym is a live registered trademark.[5] However, although I conclude that the use of a commonly used acronym might not be a facial violation of either § 1692e or § 1692g(a)(2), I am unable to conclude that "HSB/" is, in fact, a commonly used acronym. As stated above, the use of an acronym which the consumer has never encountered before could constitute a statement which is plainly confusing on its face. Despite the fact that "HSB/" is a live registered trademark, Encore has not presented sufficient evidence demonstrating the absence of a genuine issue of material fact as to whether Blarek ever encountered "HSB/," and whether "HSB/" is a commonly used acronym.

To begin with, Blarek has presented evidence that Hurley State Bank no longer exists, as it converted and eventually merged into "Citibank USA, N.A." or "Citibank (South Dakota), N.A." It is undisputed that Hurley State Bank, as of January 3, 2002, began operating as Citibank. Encore has presented a public disclosure from May 5, 2003 of Citibank USA, which states that:

> Citicorp acquired Associates First Capital Corporation and Hurley State Bank in November 2001. On January 3, 2002, Hurley State Bank was converted to a national charter with a limited purpose designation and was renamed Citibank USA. Then, Citibank USA acquired all of the commercial lending, deposit-taking, trust, and Diner's Club activities of affiliate Citibank (South Dakota), N.A.

(Def.'s Ex. D.)

---

[5]Encore also argues that the presence of the credit card account number on the validation letter would help the consumer identify the account. Although this may be true, the presence of the account number would not necessarily help the consumer identify the creditor of the account. Moreover, the FDCPA requires that the validation letter provide the name of the creditor. The existence of other information in the letter would not eliminate an explicit requirement of the FDCPA.

15

Moreover, it is undisputed that Blarek's credit card statements from March 2005 through July 2005 all identify the creditor as "Citibank USA, N.A." Such being the case, at the time the validation letter was sent, the creditor for the Zales account was operating as "Citibank USA, N.A."

To be sure, Encore has presented evidence that the creditor, in its prior communication with Blarek before the merger/conversion, referenced Hurley State Bank and transacted business as Hurley State Bank. (Ex. B, at Ex. A & D.) Moreover, Encore alleges that it sent a billing disclosure notice to all Zales customers informing them of the name change from Hurley State Bank to Citibank USA, N.A., although Encore does not provide evidentiary support for this assertion. Encore has also presented evidence that Hurley State Bank is still a registered name with the South Dakota Corporations Division.

Given the facts presented in this case, it is doubtful that the name Hurley State Bank, a name under which the creditor no longer operates but which is still registered as a corporation, can still be considered the name of the creditor for purposes of the FDCPA. However, this is not the primary issue in this case, as Encore did not use the name "Hurley State Bank," but rather used "HSB/."

Encore has failed to provide sufficient evidence to demonstrate that "HSB/" is a commonly used acronym to warrant the granting of summary judgment. As such, even if Encore had demonstrated that the use of "Hurley State Bank" would not be a facial violation of the FDCPA, summary judgment would still be inappropriate because Encore has not sufficiently demonstrated that the use of "HSB/" is not plainly confusing on its face, in violation of the FDCPA.

To be sure, Encore alleges that HSB is a commonly used acronym, and has provided evidence establishing that HSB is a service mark for Hurley State Bank Corporation South Dakota, and is registered with the United States Patent and Trademark Office. (Def.'s Ex. F.) However, this is not

16

evidence that HSB is a commonly used acronym. Encore has not presented evidence indicating that customers of Hurley State Bank or Citibank USA, N.A. have ever encountered this service mark. Whether "HSB/" constitutes a commonly used acronym is a question of fact, and Encore has failed to provide sufficient evidence to demonstrate the absence of a genuine issue of fact on this issue.

Given that there is a material issue of fact as to whether the use of "HSB/" on its face constituted a violation of § 1692g(a)(2), Blarek's failure to provide extrinsic evidence in support of her claim does not cause her claims to fail at this stage. Extrinsic evidence, such as expert testimony, would only be necessary to show confusion by the unsophisticated consumer if the validation letter did not on its face plainly cause consumer confusion in violation of the FDCPA. In my opinion, a reasonable trier of fact could conclude that the use of "HSB/" on its face would plainly cause consumer confusion.

## B. Bona Fide Error Defense for 15 U.S.C. § 1692g(a)(2) Violation

Even though there exists a genuine issue of material fact as to whether Encore's validation letter on its face plainly violated § 1692g(a)(2), Encore is still entitled to summary judgment if it qualifies for the bona fide error defense. Under 15 USCS § 1692k(c),

> A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

In order for Encore to qualify for the bona fide error defense, "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . . and (3) it must show that it maintained procedures

17

reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005).

Although the first prong of the bona fide error defense is a subjective test, the second and third prongs are necessarily objective tests. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) (citing *Kort*, 394 F.3d at 538); *see also Rosado v. Taylor*, 324 F. Supp. 2d 917, 933 (N.D. Ind. 2004); *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002).

For the first prong of intent, "[a] debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537. As to the second prong, whether the error was bona fide, Encore must show that the error "was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id.* at 538 (see Black's Law Dictionary 168 (7th ed. 1999)) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine").

The final prong, the procedures component, involves a two-step inquiry: "first, whether the debt collector 'maintained'--i.e., actually employed or implemented--procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson*, 443 F.3d at 729; *see also Jenkins v. Heintz*, 124 F.3d 824, 834, 835 (7th Cir. 1997). "[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539; *see also Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . . , § 1692k(c) only requires collectors to adopt reasonable procedures.").

Encore contends that its inadvertent inclusion of "HSB/" as the creditor meets all three prongs of the bona fide error defense. Specifically, Encore argues that (1) there is nothing in the record

18

indicating that Encore purposely tried to infringe on Blarek's FDCPA rights, (2) that its error was bona fide because it reasonably relied on representations from its client, (3) and that it maintains reasonable procedures adapted to avoid the error of misnaming a creditor.

In response, Blarek argues that Encore does not meet the final two prongs of the bona fide error test. First, Blarek contends that Encore's alleged misrepresentation was not bona fide because Encore's conduct clearly contravened existing law. Blarek cites *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) in support of its position.

In *Nielso*n, the Seventh Circuit held that the bona fide error defense did not apply when a debt collector's actions were in plain contravention of existing case law. 307 F.3d at 641. Specifically, the court held that a debt collector which sent thousands of form letters bearing the facsimile signature of an attorney who had not had any active involvement with the debtor's file contravened the court's previous opinion in *Avila v. Rubin*. *Id*. As described by the court in *Nielson*, in *Avil*a, the court had held that "an attorney must have some professional involvement with the debtor's file in order for the presence of his name on a delinquency not to be misleading." 84 F.3d at 229 (citing *Avila*, 84 F.3d at 229.)

Blarek also cites *Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037 (8th Cir. 1984), which was cited with approval in *Nielson*. In *Hulshizer*, the court held that the bona fide error defense was not available where "the language of the statute [was] unambiguous and [the creditor's] disregard of that language [was] undisputed." 728 F.2d at 1038. The defendant in *Hulzhizer* had failed to disclose in its communication to the plaintiff "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," as required under § 1692e(11).

19

Blarek concedes that a violation of law may be bona fide if the legal position taken is reasonable in light of the applicable law. *See Kort*, 394 F.3d at 538. In *Kort*, the court held that the violation was bona fide because the debt collector had relied on an interpretation by the Department of Education, which was the government agency invested with regulatory authority over the statute in question. *Id.* The Department of Education had misinterpreted the statute, but the court found that it was reasonable for the defendant to rely on the government agency's interpretation. *Id.*; *but see Hartman*, 191 F. Supp. 2d at 1045 (bona fide error not available where defendant was mistaken as a matter of law, rather than a clerical error.); *Bawa v. Bowman, Heintz, Boscia & Vician*, 2001 U.S. Dist. LEXIS 7842 (S.D. Ind. May 30, 2001) (bona fide error defense does not protect those who simply misunderstand obligations imposed by FDCPA).

I conclude that Encore has met the second prong of the bona fide error defense, because the error was a mistake of fact rather than mistake of law. To be sure, a debt collector whose conduct clearly contravenes existing law is not entitled to the bona fide error defense. However, this applies to a mistake of law, rather than a mistake of fact. Encore did not fail to include the proper name of the creditor because it did not think it was necessary under the law to correctly identify the creditor in the validation letter. Instead, Encore simply entered the incorrect name, a name which it believed to be the correct name. This is a mistake of fact. At the time of Encore's actions, it believed that it was complying with the FDCPA and existing case law by identifying the correct name of the creditor.

The situation in *Nielson* is distinguishable. The defendant in *Nielson* simply believed it unnecessary for the attorney to have substantial active involvement in the debtor's file. This was a mistake of law which clearly contravened the court's prior decision in *Avila*. Similarly, the circumstances in *Hulshizer* are also distinguishable. In *Hulshizer*, the defendant failed to include a

20

required statement under the FDCPA because it relied on the "informal advice of a Commission staff attorney and representatives of the American Collectors Association rather than the clear language of the statute . . . [and] reliance on the advice of counsel or a mistake about the law is not protected by the 'unintentional and bona fide error' defense of 15 U.S.C. § 1692k(c). 728 F.2d at 1038. Again, Encore did not mistakenly believe that identifying the creditor was not required by the FDCPA, or that a false name or completely obscure acronym was sufficient. Encore simply made a mistake of fact regarding the correct name of the creditor.

The final question to address, therefore, is whether Encore "maintained procedures reasonably adapted to avoid any such error." I conclude that there remains an issue of material fact as to whether Encore maintained procedures reasonably adapted to avoid the error of misidentifying the creditor.

Encore has listed various procedures it uses to avoid errors in identifying creditors. These include requiring all collection employees to successfully complete a full week of training on the FDCPA and applicable federal and state laws and regulations, having all employees pass a comprehensive test on the FDCPA and sign an FDCPA acknowledgment before contacting consumers, and providing written notice to employees that any violation of the FDCPA may result in disciplinary action up to and including termination of employment. Moreover, all Encore collection employees continue to receive ongoing training and testing on the FDCPA and applicable federal and state laws and regulations.

In addition, Encore relies on its clients to provide accurate information about itself. Encore's processes of uploading debtor information from its clients and generating letters are, for the most part, completely automated. The validation letters are generated through an automated system that relies on account information from CCS through its Ontario FACS system. According to Encore,

21

it presumed that the information provided by CCS regarding Blarek's account was accurate.[6] (DPFOF ¶ 20.)

Finally, Encore argues that sending the validation letter itself is a procedure reasonably adapted to avoid creditor identification errors. Encore notes that the letter includes Blarek's account number, as well as a contact number if Blarek wanted to dispute the debt.[7]

In response, Blarek argues that these are simply generic procedures which are not "reasonably adapted to avoid the error that occurred." Blarek contends that these generic procedures are irrelevant because they are not adapted to prevent an error in creditor identification, nor are they evidence that Blarek's individual letter was reviewed. Blarek suggests that reasonable procedures which Encore could have implemented include adapting its computer program to list debts owed to Citibank USA as being owed to Citibank USA, or having a written agreement with CCS that CCS will always provide the correct name of the creditor. (Pl.'s Br. at 18.); *see also Turner*, 330 F.3d at

---

[6]Blarek disputes that Encore presumed the information provided by CCS to be accurate, arguing that there is no evidence indicating that Encore presumed anything regarding the correct name of the creditor. Blarek points to the fact that there is no agreement with CCS to provide correct information, and that the process is completely automated. (Pl.'s Resp. to DPFOF ¶ 20.) However, these facts do not contradict Encore's assertion that it presumed it was receiving accurate information from CCS. Rather, the fact that the process was automated supports Encore's contention that it relied on CCS to provide accurate information.

[7]Encore also contends that it submits its letters to the Members' Attorney Program ("MAP") of the Association of Credit and Collection Professionals ("ACA") for approval. (DPFOF ¶ 34.) According to Encore, the letters submitted to MAP are reviewed by attorneys with expertise in the FDCPA, and that if the ACA MAP attorney does not approve a letter, Encore will revise the letter until it is approved or will eliminate the letter from its collection program. (DPFOF ¶¶ 35-36.) Blarek objects to this proposed fact, arguing that it is unsupported by evidence and is based on hearsay. This objection aside, these proposed procedures are largely irrelevant to the issue of whether procedures are in place to prevent errors in identifying creditors. The MAP program may be useful in preventing a mistake of law, but there is no indication that it would be useful in preventing a mistake of fact. Encore has not detailed the type of errors a MAP attorney would look for, or whether the MAP attorney would look at each individual letter, with the specific creditor and client identified, or just the basic form letter.

22

996 (noting that a reasonable preventive measure could include an agreement between the debt collector and its creditor-clients that debts are current and that the demand letter was sent soon after the assignment).

Blarek also points to the deposition testimony of Jennifer Patterson, Encore's client services representative, who stated that she did not know whether Encore received a communication from Citibank regarding Hurley State Bank's merger with Citibank, and that she did not know what actions Encore took to update Encore's letters when Hurley State Bank became Citibank USA, N.A. in 2002. (PPFOF ¶¶ 55-57.)

As an initial matter, Encore's argument that the validation letter itself is a procedure reasonably adapted to avoid creditor identification errors is unavailing. Blarek is alleging that the very text of the validation letter violates the FDCPA on its face by naming the incorrect creditor. Therefore, a procedure reasonably adapted to avoiding this error would have to be designed to avoid the inclusion of the incorrect creditor name in the letter itself. The mere sending of the letter, the inclusion of Blarek's account number, and the inclusion of language which allows the consumer to notify the debt collector of ambiguities in the name of the creditor are not procedures which would prevent the inclusion of the incorrect creditor name in the actual letter.

In regards to Encore's argument that its reliance on information provided by CCS entitles it to the protection of the bona fide error defense, much of the dispute centers around the account file CCS sent to Encore, which contained the text: "Clnt: ACBHSB CITU COMMERCE SOLUTIONS/HURLEY STATE BNK, Kansas City, MO, 6035251017201687." (PPFOF ¶ 48.) Encore maintains that it relied on this information to identify the creditor as "HSB/."

Blarek, on the other hand, argues that this text merely identified the client, and not the creditor. Blarek contends that a debt collector's client and the creditor are not necessarily the same entity, citing 15 U.S.C. § 1692a(4). Section 1692a(4) defines a "creditor" to mean "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

Even assuming I were to agree that Encore is entitled to rely on CCS to send correct information regarding the identity of the creditor, I am unable to conclude that Encore did completely rely on CCS to identify the creditor as "HSB/." To be sure, Encore has presented evidence that it received an account file identifying the client as "HURLEY STATE BNK," and Encore may be entitled to rely on this information as being accurate. However, Encore has not presented evidence that CCS provided Encore with information identifying the creditor as "HSB/," such that "HSB/" would automatically be input into the creditor line of the validation letter. Encore has merely presented evidence that it received account information identifying the client as "HURLEY STATE BNK." It is unclear whether Encore and CCS treat the client name as being identical to the creditor name.

Moreover, even if the client and creditor name are treated the same, there is no explanation as to how the text "HURLEY STATE BNK" ultimately caused "HSB/" to appear in the validation letter. It is also unclear whether Encore was ever notified by CCS or Citibank that Hurley State Bank had changed to Citibank USA, N.A. If Encore was aware of the change, it may no longer be reasonable for Encore to have relied on outdated information provided by CCS. Reasonable procedures should include those which update client and creditor information once Encore is aware

24

of a change in name. Such being the case, there is a genuine issue of material fact as to what processes Encore used to input the creditor name after receiving client information from CCS.

This is not to say that a procedure involving comprehensive training of employees in combination with an automated system which relies on identification information from the client or creditor could not be considered reasonably adapted to avoid the error in question. Indeed, as noted by the court in *Johnson*, "[p]rocedures which may be reasonably adapted to avoiding a clerical error--e.g., sending employees and staff to training seminars or subjecting employees and staff to compliance testing--cannot shield an attorney from liability for legal errors because such clerical procedures are mostly about the mechanics for collecting debts." 443 F.3d at 730; *see also Jenkins*, 124 F.3d at 834 (debt collector entitled to bona fide error defense where procedures included "the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed pre-litigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act."). As such, Encore's general training of staff on the FDCPA may be reasonably adapted if the error was a clerical error, such as an employee incorrectly inputting "HSB/" rather than "HURLEY STATE BNK" (assuming that Hurley State Bank was the creditor).

Furthermore, Encore's procedure may be reasonably adapted if CCS provided Encore with the acronym "HSB/" in the development of the automated computer system. As stated above, Encore may be entitled to rely on information provided by CCS in identifying the creditor. If CCS instructed Encore in the development of the computer system to automatically insert "HSB/" as the creditor name, then this might also be considered a reasonably adapted procedure.

25

In sum, Encore has failed to provide sufficient evidence that it relied completely on CCS' representation of the proper creditor name such that there is no genuine issue of material fact on the bona fide defense question. Given the lack of clarity as to how the text "Clnt: ACBHSB CITU COMMERCE SOLUTIONS/HURLEY STATE BNK, Kansas City, MO, 6035251017201687" was ultimately converted to "HSB/," a reasonable jury could conclude that Encore has not shown by a preponderance of evidence that it maintained procedures reasonably adapted to avoid incorrectly identifying the creditor.

## C. 15 U.S.C. § 1692e(10)

The FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). As with § 1692g(a)(2), in order to determine whether any false representation or deceptive means were used by the collector under § 1692e, the Seventh Circuit applies the "unsophisticated consumer" standard. *See McMillan*, 455 F.3d at 759; *Gammon*, 27 F.3d at 1257. "The inquiry under §§ 1692e [and] 1692g . . . is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan*, 455 F.3d at 759. Thus, a collection letter violates § 1692e(10) if it is "false or misleading to the unsophisticated consumer." *Id*. at 762.

According to Blarek, identifying the creditor as "HSB/" rather than "Citibank USA, N.A." was a "false representation . . . to collect or attempt to collect any debt or to obtain information concerning a consumer" under 15 U.S.C. § 1692e(10). Blarek argues that § 1692e is a strict liability statute, and that any literally false statement in a validation letter is a violation of the FDCPA. Furthermore, Blarek contends that no extrinsic evidence is required to prove a violation because an objectively false statement is per se wrongful under the FDCPA.

26

In support, Blarek cites *Randolph v. IMBS, Inc.*, in which the Seventh Circuit stated that "[d]ebt collectors may not make false claims, period." 368 F.3d 726, 730 (7th Cir. 2004); *see also Bartlett*, 128 F.3d at 499 499 (For statutory damages, "[a]ll that is required is proof that the statute was violated.") *Hartman*, 191 F. Supp. 2d at 1046 ("Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim."). In *Randolph*, the court held that § 1692e(2)(A), the provision which prohibits the "false representation" of "the legal status of any debt," creates a strict-liability rule. *Id.* at 930. Such being the case, "the FDCPA allows liability without proof of a mental state." *Id.*

Encore disputes that there is a bright line rule that all literally false statements are per se violations of the FDCPA. Rather, Encore argues that the unsophisticated consumer standard still applies, and that Blarek must demonstrate through extrinsic evidence that Encore's letter was interpreted by a significant portion of unsophisticated consumers as being a false statement by identifying the creditor as "HSB/." (Def.'s Reply Br. at 9.)

As an initial matter, as with the analysis under § 1692g(a)(2), whether a statement is a false representation under § 1692e(10) is still governed by the unsophisticated consumer standard. To be sure, a literally false statement may well be inherently false or misleading to the unsophisticated consumer. However, this does not mean that the analysis under § 1692e(10) rests entirely on whether a statement is literally false.[8] Although the FDCPA is a strict liability statute, this simply means that

---

[8]There may also be cases in which it is not possible to determine whether a statement is literally false. In the case at hand, the parties dispute whether "Hurley State Bank" is still technically in existence. The resolution of this question depends on whether a merged corporation which is still registered can still be considered in existence, and it is unclear whether there exists one definite answer to this question. As such, sole reliance on a determination of whether a statement is literally false could lead to highly technical arguments with no clear resolution, and which are wholly unrelated to the issue of how an unsophisticated consumer would perceive the letter.

27

the FDCPA does not require proof of the mental state of the debt collector in order to establish liability. It does not mean that § 1692e(10) does not require proof that an unsophisticated consumer would perceive the statement as being false or misleading, although the proof may be predicated on the statement itself.

Moreover, this is not to say that all literally false statements which an unsophisticated consumer would perceive to be false or misleading necessarily create liability under the FDCPA. Indeed, as noted by Encore, a recent decision by another judge in this district holds that a false statement in a validation letter may not give rise to liability if this would create "patently absurd consequences." *Robbins v. Wolpoff & Abrahamson, LLP*, 05-C-315 (E.D. Wis. 2007) (citing *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir. 1987) ("A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute."). In *Robbins*, the court declined to impose liability where the debt collector provided more information than the law required, and erroneously stated that the law required it. *Id*. at 7. The court held that holding the defendant liable would be patently absurd, especially when considering that the plaintiff admitted that this information was helpful. *Id*.

However, although liability for a false statement may not lie if to impose liability would create absurd consequences, the case at hand does not fit into this exception. Imposing liability for stating the incorrect name of the creditor would not lead to patently absurd consequences or thwart the purposes of the FDCPA.

Indeed, stating the name of the creditor to whom the debt is owed is one of the requirements of a validation letter. As stated above, 15 U.S.C. § 1692g(a) expressly requires the debt collector to state the name of the creditor to whom the debt is owed. Thus, unlike the situation in *Robbins*, to

28

impose liability based on a statement incorrectly identifying the name of the creditor would not contravene the purposes of the statute. A clearly false representation of the creditor's name could constitute a "false representation . . . to collect or attempt to collect any debt or to obtain information concerning a consumer" under § 1692e, and imposing liability therefor would comport with the purposes of the FDCPA.

The issue, therefore, is whether stating in a validation letter that the creditor was "HSB/"rather than "Citibank USA, N.A." on its face is a false representation which an unsophisticated consumer would plainly perceive as being false or misleading, in violation of § 1692e(10). As with the issue of what constitutes a creditor's "name" under § 1692g(a)(2), what constitutes a "false representation" under § 1692e(10) in the context of a creditor's name is not as easily determined as, for example, what constitutes a false representation of the amount of the debt. There may be multiple names for a creditor which an unsophisticated consumer could still perceive as being the correct name of the creditor.

Moreover, what constitutes a failure to properly name a creditor under § 1692g(a)(2) and what constitutes a false representation of the creditor name under § 1692e(10) are necessarily interrelated. A creditor name which is proper under § 1692g(a)(2) cannot be a false representation under § 1692e(10). Conversely, the use of a creditor name which does not violate § 1692g(a)(2) cannot be a false representation under § 1692e(10).

Such being the case, as with the analysis under § 1692g(a)(2), the use of a name which is not the exact incorporated name of the creditor does not necessarily violate § 1692e(10) such that no extrinsic evidence is ever needed to prove confusion. The debt collector might not be making a false representation if it used in identifying the creditor "a name under which [the creditor] usually

29

transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Maguire*, 147 F.3d at 235.

Although the use of a commonly used acronym might not constitute a false representation under § 1692e(10), the use of an acronym which the consumer has never encountered before could constitute a false representation which on its face would be plainly false or misleading to an unsophisticated consumer. As discussed above, Encore has failed to provide sufficient evidence to demonstrate the absence of a genuine issue of fact as to whether "HSB/" is a commonly used acronym. Such being the case, a reasonable jury, without the existence of extrinsic evidence, could conclude that Encore's use of "HSB/" constituted a false representation.

### d. Bona Fide Error Defense for 15 U.S.C. § 1692e(10) Violation

As with the alleged violation of § 1692g(a)(2), even though there exists a genuine issue of material fact as to whether Encore's validation letter on its face plainly violated § 1692e(10), Encore is still entitled to summary judgment if it qualifies for the bona fide error defense.

Given that the error relating to the alleged violation of § 1692e(10) is identical to the error relating to the alleged violation of § 1692g(a)(2), namely the inclusion of "HSB/" as the creditor name, I conclude that there remains an issue of material fact as to whether Encore maintained procedures reasonably adapted to avoid the error of making a false statement by misidentifying the creditor. The analysis of the bona fide error defense is identical for both the alleged violation of § 1692e(1) and the alleged violation of § 1692g(a)(2).

### IV. CONCLUSION

Encore has failed to present sufficient evidence to demonstrate that there is no genuine issue of material fact that as to whether identifying the creditor as "HSB/" violated § 1692e or §

30

1692g(a)(2) on its face. Moreover, there remains a genuine issue of material fact as to whether Encore maintained procedures reasonably adapted to avoid incorrectly identifying the creditor.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that on Monday, April 16, 2007, at 9:00 a.m. in Room 253 of the United States Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, a scheduling conference will be conducted to discuss with the parties the further processing of this case to final resolution.

**SO ORDERED** this 27th day of March 2007, at Milwaukee, Wisconsin.


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge